Case 2:15-cv-00319 Document 22 Filed in TXSD on 11/03/15 Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
November 03, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| KATY CARRIGAN, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-319 |
| § | |
| LIVE OAK NURSING CENTER, LLC; § | |
| dba LIVE OAK NURSING CENTER, *et al*, § | |
| § | |
| Defendants. § | |

# ORDER COMPELLING ARBITRATION

After he suffered a stroke, the care of Santos Valadez, Sr. (Mr. Valadez) was entrusted to Live Oak Nursing Center, LLC d/b/a Live Oak Nursing Center (Live Oak). Just over a year later, on April 28, 2014, Mr. Valadez fell out of his wheelchair while under the care of Live Oak. He sustained personal injuries that led to his death on May 7, 2014. His family[1] now sues Live Oak and Skilled Healthcare, LLC (Skilled Healthcare), making claims for wrongful death and survival damages. D.E. 1.

Before the Court is "Defendants' Joint Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration" (D.E. 11). Defendants assert that all Plaintiffs must submit their claims to arbitration pursuant to an agreement that provides for arbitration of all health care liability claims arising from the care of Mr. Valadez. Pursuant to principles of equitable estoppel, Defendants seek to enforce the arbitration agreement against Plaintiffs who are not signatories and in favor of Skilled Healthcare,

---

[1] Katy Carrigan, Individually and on Behalf of the Estate of Santos Valadez, Sr., Deceased, Santos Valdez, Jr., James Valadez, and Roberto Valadez.

1 / 17

which is not a signatory.  Plaintiffs respond that the agreement was not properly executed and does not bind them.  For the reasons set out below, the motion is GRANTED.

### A. Questions Before the Court

Whether a party is entitled to an order compelling arbitration requires a determination that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of that arbitration agreement.  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  Plaintiffs have alleged questions of healthcare liability under Chapter 74 of the Texas Civil Practice and Remedies Act.  The arbitration agreement at issue covers, among other things, "negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding in tort or in contract."  D.E. 14-1, p. 45.

There is no dispute that the scope of the purported arbitration agreement encompasses the issues in this lawsuit.  The question for the Court's consideration is whether the arbitration agreement was adequately executed and whether it reaches the claims of these particular parties.

### B. Standard of Review

Where appropriate, "[a]rbitration is favored in the law."  *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir.).  Whether an arbitration agreement was formed between the parties presents questions within the state law of contracts.  *See generally*, *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013);

*Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

Whether an arbitration agreement may be enforced against a non-signatory by applying equitable estoppel principles is a question entrusted to the discretion of the Court, with findings of fact subject to a clearly erroneous standard of review upon appeal to the Fifth Circuit. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 525, 528 (5th Cir. 2000); *Miller,* 726 F.3d. at 722. If the Court determines that the arbitration agreement is enforceable against the Plaintiffs, then 9 U.S.C. § 3 requires a stay of the legal proceedings. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006).

### C. Evidentiary and Procedural Objections

Defendants submitted six documents with their motion to compel, including the putative arbitration agreement and three other documents purportedly signed by Katy Carrigan upon the admission of Mr. Valadez to Live Oak. D.E. 11-1 to 11-4.[2] Plaintiffs objected to the consideration of these documents on the basis that they were not properly authenticated as required by Fed. R. Evid. 901. D.E. 13, p. 3. In reply, Defendants offered an authenticating affidavit (D.E. 14-1), prompting new objections (D.E. 15) that replies cannot be filed without leave of court, the submission of evidence in a reply is untimely, and the affidavit is inadmissible hearsay, conclusory, and irrelevant.

**Leave to File Reply**. It is within the Court's discretion to treat the filing of a reply as carrying with it an implied motion for leave to file and the Court does so here.

---

[2] The Court does not take Plaintiffs' objections as pertaining to the copy of Plaintiff's Complaint (subject to judicial notice) or the Defendants' demand for arbitration (a matter Plaintiffs do not dispute). See D.E. 11-5 and 11-6.

*E.g., Jacuzzi, Inc. v. Franklin Elec. Co.*, No. CIV.A. 33:07-CV-1090D, 2008 WL 2185209, *4 (N.D. Tex. May 27, 2008). The Court GRANTS the implied motion for leave to file. While Plaintiffs object to the reply as offering new evidence not included with the motion in violation of Local Rule 7.7, the Court exercises its discretion, discussed more fully below, to accept it for its primary purpose of authenticating Exhibits A and B to the motion (D.E. 11-1 and 11-2) and for its secondary purpose of demonstrating the terms upon which Mr. Valadez was admitted to Live Oak.

**Untimely Evidence**. To the extent that the reply provides additional evidence, the Court notes that Plaintiffs have not alleged any prejudice and have not requested additional time to evaluate the evidence or respond to it. Where there is no prejudice and where there is no obstacle to Defendants re-filing the motion if the Court were to deny it on the basis of such non-dispositive procedural issues, nothing is to be gained by standing on form over substance. The Court OVERRULES Plaintiffs' objection to the reply as supplying additional evidence.

**Objection to Authenticity**. As Plaintiffs admit, the bar for the authentication of business records is not high. D.E. 13, p. 3. The Court notes that Plaintiffs do not affirmatively deny that the records Defendants have offered are authentic. Instead, they merely deny that Defendants have fully complied with the requirements for demonstrating that fact. In particular, they challenge the representation that the records were prepared "at or near the time of the events or conditions recorded . . . by a person with knowledge of the events or conditions recorded." D.E. 15, pp. 2-3. The Court is satisfied with Mr. Feist's representation that such records are created at the time of each

resident's admission by an authorized administrator or representative of Live Oak and that Mr. Valadez's admission and accompanying paperwork were no different. The Court OVERRULES Plaintiffs' objection that Mr. Feist's affidavit fails to comply with the business records exception to the hearsay rule.

**Conclusory Testimony—"signed and executed by Carrigan**." Plaintiffs further object to Mr. Feist's affidavit on the basis that it is conclusory with respect to his representations that documents were signed and executed. Plaintiffs are silent on the proposition that Katy Carrigan sought to admit Mr. Valadez to Live Oak and appeared in person and placed her name on the documents presented to her in the presence of a Live Oak administrative representative. The Court therefore accepts Mr. Feist's testimony as indicating that pursuant to Live Oak's business practices, Katy Carrigan affixed her signature to the documents in the file for the purpose of having Mr. Valadez admitted to the facility and the objection on that basis is OVERRULED. To the extent that the testimony purports to give legal significance to the placement of the signature, the Court SUSTAINS the objection that the testimony states a legal conclusion and the Court will disregard that aspect of the affidavit.

**Relevance**. Plaintiffs object to the consideration of the financial file as evidence that Katy Carrigan was acting as the agent of Mr. Valadez when she affixed her name to the arbitration agreement. Plaintiffs argue that agency can only be demonstrated by acts of the principal. The Court holds that the records are some evidence of an act of an agent and are thus relevant. The Court OVERRULES the objection. The objection is treated as going to the weight to be accorded the evidence rather than to its admissibility.

**Conclusory or Irrelevant Testimony—"signed by Live Oak."** Last, Plaintiffs object that Mr. Feist's affidavit suggests only that the attached paperwork is typically signed by a Live Oak representative. The objection is based on the testimony being either conclusory or irrelevant in that it fails to affirmatively represent that the records attached to his affidavit were actually signed in typical fashion. The Court holds that Mr. Feist's affidavit appropriately offers the file as a record that is consistent with typical business practices such that it is what it purports to be. The Court OVERRULES the objections to this affidavit testimony.

**D. Whether Katy Carrigan Executed the Arbitration Agreement**

Plaintiffs, proffering Katy Carrigan's Declaration, argue that she did not execute or sign the arbitration agreement because the signature line is left blank. D.E. 13, p. 16. In the same sentence, she admits "My name is written on the line designated for printing a name." *Id*. The Court notes that the name "Katy Valadez Carrigan" is written in cursive on the line designated for "Printed Name." D.E. 14-1, p. 46. The same is true for the Center's Authorized Agent, which appears to be Desi Lynn Huff, whose signature appears on the "Printed Name" line. *Id*. Over both handwritten names, on the line for their respective signatures, is a date stamp of April 8, 2013, the date Mr. Valadez was admitted to Live Oak.

Katy Carrigan's name appears in a form identical to that used when signing other documents in the same file on lines designated for "Responsible Party Signature," "Patient/Resident/Agent/Legal Representative," "Signature of Resident/Responsible Party," "Signature of Resident/Person Signing on Behalf of Resident," "Signature of

6 / 17

Resident or Sponsor," and simply "Signature."  D.E. 14-1, pp. 12, 16, 17, 18, 25, 28, 32, 53, 54, 59.  It is not the appearance of the name that Plaintiffs rely on to invalidate the arbitration agreement, but its location on the document.  So the issue of whether Katy Carrigan executed the arbitration agreement is reduced to the question of whether writing a name in cursive on a document where a printed name was expected to be affixed instead of where the signature was to be affixed constitutes an execution of the agreement pursuant to Texas contract law.

Pursuant to Texas law, a signature appearing anywhere on the document may support a finding that the document was appropriately signed.  In *Lebow v. Weiner*, 420 S.W.2d 755, 758 (Tex. Civ. App.—Houston [14th Dist.] 1967, no writ), the signature for a real estate transaction appeared on an attachment and not on the designated signature line.  The court wrote, "the writing of the name of the maker in the body of the instrument, in such connection as to evidence his intention to give effect, vitality, or authenticity to the entire writing as one completed instrument, is to be deemed a signing, within the meaning of the law."  *Id*. (quoting *Newton v. Emerson*, 18 S.W. 348, 349 (Tex. 1886)).  This principle continues to be applied in more recent years.  *See e.g., SpawGlass Const. Corp. v. City of Houston*, 974 S.W.2d 876, 882 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Levy v. Hunt*, No. 14-00-00549-CV, 2001 WL 306149, *6 (Tex. App.—Houston [14th Dist.] Mar. 29, 2001).

As noted, there is nothing in the appearance of the signature on the arbitration agreement to distinguish it from the many others provided as part of the 60-page Resident Admission Agreement (RAA, D.E. 14-1), all of which were clearly affixed for the

purpose of obtaining Mr. Valadez's admission to Live Oak.  While Plaintiffs argue that the arbitration provision was not a condition precedent to Mr. Valadez's admission, that does not change the fact that the agreement was presented with the admission packet and was, in fact, signed.

Because the specific placement of the signature, absent some other evidence of an intention not to be bound, is not material to the effect of the signature to activate a contractual agreement, the Court holds that Katy Carrigan signed and executed the arbitration agreement.  The preponderance of the evidence, demonstrating that Live Oak accepted Mr. Valadez as a patient on the basis of the RAA and cared for him for over a year, is that Katy Carrigan had the intent to agree to the terms of the written contract containing the arbitration provision.  Thus the Court does not reach Defendants' argument that the parties could have agreed to arbitration without the necessity of a written contract.

### E. Whether the Non-Signatories May Be Bound to the Arbitration Agreement

State and federal courts agree that non-signatories to an arbitration agreement may be bound to its terms in six scenarios:  (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).  In their motion to compel (D.E. 11), Defendants rely on an agency theory, arguing that Katy Carrigan was obviously acting as the responsible party and was therefore the agent of Mr. Valadez, based on her relationship to him and the fact that she assumed responsibility when

signing off on the RAA. In their reply (D.E. 14), Defendants add a discussion of equitable estoppel in the form of direct benefits estoppel theory. Therefore, the Court considers only those theories.

**1. The Estate of Santos Valadez, Sr., Deceased**

**a. Katy Carrigan Was Not Authorized to Sign for Mr. Valadez**

Defendants assert that Katy Carrigan signed the arbitration agreement as Mr. Valadez's agent, citing *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 68 (Tex. 2005) (per curiam), in which the court recited that the patient's wife signed the arbitration agreement on behalf of the patient. Plaintiffs challenge that, even if Katy Carrigan signed the arbitration agreement, she did not have authority to do so as the agent of Mr. Valadez. Because there is legally insufficient evidence of the alleged agency, Plaintiffs argue, the agreement does not bind Mr. Valadez or Katy Carrigan, much less the other Plaintiffs who were not signatories and not represented by Katy Carrigan. *Nexion* does not preempt this issue because the question of agency was not raised in that case.

Defendants also rely on *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998). In *Sampson*, the question was whether the hospital was liable under vicarious liability principles for the acts of the emergency room doctor. The court explored express and apparent agency principles, both of which require some act by the principal. Plaintiffs challenge Defendants' suggestion that Katy Carrigan had sufficient authority to act as Mr. Valadez's agent.

Defendants' motion states in conclusory form, "It is clear that Mr. Valadez directed that Katy Carrigan make treatment and other important decisions on his behalf."

9 / 17

D.E. 11, p. 5.  Later, Defendants refer to "the words, conduct, and circumstances surrounding the relationship between Ms. Carrigan and her father."  *Id*. at 6.  The only citation to evidence to support these assertions is to the RAA pages that Katy Carrigan signed.  Even after Plaintiffs pointed out the critical evidentiary void, Defendants failed to supply any evidence of Mr. Valadez's capacity to confer agency authority or any acts of him, as principal, conferring that authority on Katy Carrigan.  While Live Oak may have relied on Katy Carrigan's assertions of authority, any such reliance is misplaced under the law without some proof that the principal conferred that authority.

Instead of presenting evidence, Defendants cite *Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 516 (Tex. 2015).  *Fredericksburg* is inapposite because in that case, the arbitration agreement had been signed by the nursing home resident, himself.  The issues in that case had to do with the conflict between the Texas Medical Liability Act and the Federal Arbitration Act.  There was only one reference to an agent, and that was an insurance agent.  *Id*. at 522.  *Fredericksburg* does not support the finding of an agency relationship here.

Defendants also cite an unpublished opinion out of the San Antonio Court of Appeals: *Specialty Select Care Ctr. of San Antonio, LLC v. Flores*, No. 04-13-00888-CV, 2015 WL 5157034, *4-5 (Tex. App.—San Antonio Sept. 2, 2015, n.p.h.).  Again, that case does not supply any reason to treat Katy Carrigan's signature as a duly authorized agent's signature binding Mr. Valadez.  That case did not bind the patient to the family member's signed agreements as agent, but rather on other principles discussed below.  The record here reflects that Mr. Valadez suffered a stroke and that Katy

Carrigan attended to his medical needs as a caring daughter and not as an authorized agent.

Plaintiffs are correct that an agency requires some act of the principal to confer agency authority. "Declarations of the alleged agent, without more, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority." *Gaines v. Kelly*, 235 S.W.3d 179, 183-84 (Tex. 2007). There is no evidence in this record that Mr. Valadez was sufficiently cognizant to intentionally authorize or even attempt to authorize an agent or object to anyone's assumption of agency authority. Defendants' reliance on the definition of responsible party does not help because that definition also requires the resident's authorization. *See* 40 Tex. Admin. Code § 19.101(124).

The law does not presume an agency. *See generally*, *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944)); *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 842 (Tex. App.—Dallas 2014, no pet.). Defendants have not supplied the Court with any authority for finding agency when the next of kin takes on the responsibility of the care of an incapacitated family member and the Court has found no such authority in an independent search. Thus the Court rejects Defendants' argument that Katy Carrigan signed the arbitration agreement as a duly authorized agent. This is not, however, determinative of Defendants' motion to compel arbitration.

### b. The Estate is Bound By Direct Benefits Estoppel

In *Specialty Select Care*, the court applied direct benefits estoppel to enforce arbitration against the estate of a deceased nursing home resident. Noting that the claim arose from the contractual relationship between the nursing home and the resident, the Court determined that the estate had to take the unfavorable terms of that relationship with the favorable ones. The same analysis applies here.

Live Oak accepted Mr. Valadez as a resident patient pursuant to the RAA. It agreed to supply healthcare to Mr. Valadez in exchange for a number of terms that included payment, consent to treatment, authority to call in other healthcare providers, such as dentists, and the mutually binding arbitration agreement. *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (multiple documents included in a single transaction are read together). It is that contractual relationship that serves as the basis for the Estate's claims, even though they sound in tort.

The preliminary statement of the Complaint recites,

> Defendants failed to properly evaluate Mr. Valadez when he was initially admitted, failed to properly monitor and supervise Mr. Valadez while he was a resident of the facility, and failed to provide him with the appropriate fall prevention and fall protection measures and devices after Defendants had actual knowledge that he was at an increased risk for falling and sustaining injury.

D.E. 1, p. 2. This context serves as the basis for the alleged liability throughout the factual portion of the Complaint and in the causes of action. Defendants would not have a tort duty to evaluate, supervise, and protect Mr. Valadez—these specific claims—if

Defendants had not accepted him as a patient pursuant to the contractual terms of the RAA.

As is the case here, the nursing home patient in *Specialty Select Care* was admitted upon the next of kin's signature—her husband's. *Specialty Select Care,* 2015 WL 5157034 at *3. The court considered the patient's enjoyment of the benefits of the RAA to bind her to the arbitration agreement. "[W]hen a nonparty consistently and knowingly insists that others treat it as a party, it cannot later 'turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.' A nonparty cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (in a real estate construction contract, holding the purchaser's children to the terms of the contract because they exercised rights of a purchaser and lived in the home; quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)).

Even though there was no recitation of any evidence that the patient, herself, affirmatively sought the contractual benefits that her husband had secured for her, the San Antonio court held, "[The patient] sought and obtained substantial and direct benefits from the admissions agreement through the services she was provided." *Specialty Select Care,* at *5. Here, the direct benefits estoppel theory is sufficient to bind Mr. Valadez's estate with respect to his survival claims the same as was done in *Specialty Select Care*. The claims depend upon the duties created by the contract, so the arbitration burdens are carried with the benefits of the RAA and bind the Estate.

### 2. Katy Carrigan is Bound by Signature and Direct Benefits Estoppel

As demonstrated above, Katy Carrigan signed the arbitration agreement and it is enforceable against her for that reason. In addition, the Court considers whether the direct benefits estoppel theory could be applied to her. In *Specialty Select Care*, the only party bound to the contract under the direct benefits estoppel theory was the patient's estate after her death. In fact, the nursing home's attorney in that case was quoted as saying, "It would be a different question if he [the husband who signed] was bringing claims on his own. That's not a question before you, and I believe that arbitration agreement is binding because of that." *Specialty Select Care,* at *4.

This Court, faced with that un-asked question in *Specialty Select Care*, finds that the direct benefits estoppel argument also binds Katy Carrigan as the person who affirmatively requested Live Oak's services for her father and who agreed to the terms on which those services were delivered by entrusting Mr. Valadez to Live Oak's care. Plaintiffs argue that the fact that Mr. Valadez was admitted and received services as a result of the RAA is irrelevant because, on its face, the arbitration agreement recites, "the execution of this arbitration agreement is not a precondition to the furnishing of services to Resident by Center." D.E. 14-1, p. 46.

Whether or not it was a precondition, it was a term that Katy Carrigan agreed to when she sought and obtained the admission of Mr. Valadez to Live Oak and her claims are based upon the relationship created by that nursing home admission. Additionally, as discussed below, Katy Carrigan's allegations against Defendants are based on the

relationship between Mr. Valadez and Defendants created by the RAA. Thus Katy Carrigan may be bound by direct benefits estoppel because she affirmatively secured the agreement in exchange for the care of her father and because she sues on the relationship created by the agreement.

### 3. The Other Children: Santos Valadez, Jr., James Valadez, and Roberto Valadez

The facts upon which the Court may hold the Estate and Katy Carrigan bound to the arbitration agreement through direct benefits estoppel are not as strong when addressing the other children. There is nothing in the record to show that the other children assumed any responsibility for Mr. Valadez's care or sought his admission to Live Oak. However, they do seek to hold Defendants liable by relying on duties established by the RAA. For that reason, the "burdens with the benefits" argument still holds. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003). *See also*, *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (referring to it as simply an "equitable estoppel" theory).

In addition, because the agreement is enforceable against Mr. Valadez, it is also enforceable against his children pursuant to its terms. The arbitration agreement states that it "shall inure to the benefit of and bind the parties, their successors and assigns, including . . . all persons who's [sic] claim is derived through or on behalf of Resident, including that of any parent, spouse, child . . . ." D.E. 14-1, p.45. All of the Plaintiffs are thus bound by the arbitration agreement.

**F.  Whether the Agreement Is Enforceable In Favor of Skilled Healthcare**

Defendants also rely on equitable estoppel principles and the terms of the RAA to allow Skilled Healthcare to benefit from the arbitration agreement even though it is not a signatory.  *See Grigson,* 210 F.3d. at 527-29.  The arbitration agreement states, "All claims based in whole or in part on the same incident, transaction, or related course of care or services provided by Center to Resident, shall be arbitrated in one proceeding."  *Id*.  There appears to be no dispute that Skilled Healthcare provided services at the request of Live Oak and that Plaintiffs' claims are stated against both for the same conduct without distinction.  Under the terms of the arbitration agreement, Plaintiffs must arbitrate their complaints against Skilled Healthcare in the same proceeding as the arbitration against Live Oak.

**G. Conclusions**

Defendants' reply and the evidence submitted with it are properly before the Court.  For the reasons set out above, the Court holds that Katy Carrigan signed and executed the arbitration agreement along with the rest of the RAA.

- Plaintiff, Estate of Santos Valadez, Sr., Deceased is bound by the terms of the arbitration agreement pursuant to the direct benefits theory of equitable estoppel by virtue of the residential treatment Mr. Valadez received from Live Oak.

- Plaintiff, Katy Carrigan is bound to the terms of the arbitration agreement by virtue of her signature and direct benefits estoppel because she sought and obtained Mr. Valadez's admission to Live Oak

- and sues on the basis of that relationship. She is also bound by the terms of the arbitration agreement because it is enforceable against Mr. Valadez and any child.

- The remaining Plaintiffs, Santos Valadez, Jr., James Valadez, and Roberto Valadez are also bound by the terms of the arbitration agreement by direct benefits estoppel because they have sued to enforce duties that exist only by virtue of the relationship created between Mr. Valadez and Live Oak pursuant to the RAA, which contains the arbitration agreement.

- The arbitration agreement inures to the benefit of Skilled Healthcare as well as Live Oak by virtue of its "arbitration in one proceeding" terms.

The Court **GRANTS** the motion to compel arbitration (D.E. 11), **ORDERS** the parties to arbitrate their dispute pursuant to the terms of the arbitration agreement (D.E. 14-1, pp. 45-46, and **STAYS** this action pending completion of the arbitration proceedings. The Court further **ORDERS** the parties to file with the Court a status report on May 1, 2016, and every six months thereafter to advise the Court of the status of the arbitration proceeding and whether this case may be closed.

ORDERED this 3rd day of November, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE